**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| TRUTH TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | (JURY DEMAND) |
| | ) | |
| JONATHAN ARNOLD; | ) | |
| | ) | |
| JAMES HUGHES; | ) | |
| | ) | |
| PATRICK BRANNEN; | ) | |
| | ) | |
| CHANDRA MOULI, | ) | |
| a/k/a CHANDRAMOULI | ) | |
| GANGABAI/NATARAJAN; | ) | |
| | ) | |
| KEITH FRITZ; | ) | |
| | ) | |
| ANDREW PUCKETTE; | ) | |
| | ) | |
| DIANE ACKERMAN | ) | |
| a/k/a DIANE RUDNET; | ) | |
| | ) | |
| eSPEAR FOUNDING PARTNERS I LLC; | ) | |
| | ) | |
| eSPEAR FOUNDING PARTNERS II LLC; | ) | |
| | ) | |
| eSPEAR FOUNDING PARTNERS III LLC; | ) | |
| | ) | |
| eSPEAR FOUNDING PARTNERS IV LLC; | ) | |
| | ) | |
| eSPEAR LLC; and | ) | |
| | ) | |
| eSPEAR MANAGEMENT PARTNERS LLC | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Plaintiff, Truth Technologies, Inc., by and through counsel, and for its

Verified Complaint, hereby states as follows:

## PARTIES

1.      Plaintiff, Truth Technologies, Inc. (hereafter "TTI") is a Virginia corporation incorporated in 1996, with its principal place of business is in Florida.  At all times relevant hereto, its principal Virginia office is where two of its United States servers are located at 19004 Panther Court, Leesburg, Virginia.  Five other TTI servers are hosted by a company named Rackspace in Ashburn, Virginia.  TTI's founder, President, CEO and majority shareholder is Egide Thein.

2.      Defendant, Jonathan Arnold ("Arnold") is a citizen of Virginia who resides at 19004 Panther Court, Leesburg, Virginia.  Arnold was originally employed by TTI from 1997 until 2002 and re-employed with TTI beginning in March, 2012.  Arnold was an employee and a member of the Board of Directors of TTI until April 23, 2017.  Arnold was the head of the development and operations team.  He controlled all the systems and was involved with and privy to the development of various software projects and technologies, including codes and algorithms for the operation of anti-fraud, anti-money laundering and compliance software used by TTI in providing services to its customers.  He was privy to all of TTI trade secrets and copyrighted software.  In addition to the foregoing, Arnold created and wrote software code as a work made for hire for TTI software systems and programs, including the key Sentinel application, while an employee and member of the Board of Directors of TTI.  Immediately prior to his termination he completed as a work made for hire a project involving the Sentinel algorithms which control data loading, evaluation and search.  He has admitted removing the codes for these algorithms and utilizing them for his new employer eSpear. (*See* Exhibit 1 email chain from Jonathan Arnold to Darren Spurgeon dated April 21, 2017).  He is a co-conspirator with all other Defendants named here to devalue and destroy TTI's business in order to set up a business competing with it.  (A copy of his employment agreements with TTI are attached as Group Exhibit 2).

3.     Defendant James Hughes ("Hughes") is a citizen of New York who resides at 1 Somerset Lane, St. James, New York. Hughes was corporate counsel to TTI from 2005 to 2016. In 2014, Hughes became President and a Board member of TTI.  Like Arnold, he had access to and was privy to all of TTI trade secrets and copyrighted software, as well as proprietary information concerning customers and marketing of TTI services.  As stated below he was a co-conspirator in the attempt to devalue and destroy TTI's business so that he could set up a competing company with other co-conspirators.  He was a "collaborator" on a Power Point Presentation prepared in 2015 through 2016 which was developed while he was an employee of TTI and which sought to secure investors for a competing business then known as HubCheck which evolved into eSpear.

4.     Defendant Patrick Brannen ("Brannen") is a citizen of Pennsylvania, residing at 2432 Raven Hollow Road, State College, PA.  He was the Senior Vice President of Development, Operations and Head Security Engineer and an employee of TTI from 2004 to 2017.  Along with Arnold, he directed and was privy to all the software projects and technologies, codes and algorithms utilized by TTI for its customers, and he served as head of security for TTI's information technology systems, including Sentinel.  He was also privy to all of TTI trade secrets, including software codes, plans for software development, customers, and plans for future business development.  He is a co-conspirator with all other Defendants named here to devalue and destroy TTI's business in order to set up a business competing with it.  He is also in possession of TTI hardware known as OWLs, servers containing TTI proprietary and customer proprietary information which he has refused to return to TTI and which he has threatened to destroy. (*See* Exhibit 3 email chain and letter from Patrick Brannen to Egide Thein and others dated July 12, 2017).  He was a "collaborator" on a Power Point Presentation prepared in 2015 through 2016

which was developed while he was an employee of TTI and which sought to secure investors for a competing business then known as HubCheck which evolved into eSpear.  He is now an employee of eSpear.

5. Defendant Chandra Mouli a/k/a Chandramouli GangabaiNatarajan ("Mouli") is a citizen of California, residing at 435 Karelian Street, Danville, CA.  He was an employee and Chief Technology Officer of software at TTI from 2008 to March, 2017.  He had knowledge of and developed TTI trade secret applications and software code as works made for hire. He was a "collaborator" on a Power Point Presentation prepared in 2015 through 2016 which was developed while he was an employee of TTI and which sought to secure investors for a competing business then known as HubCheck which evolved into eSpear.  He is now an employee of eSpear.

6. Defendant Keith Fritz ("Fritz") is a citizen of Florida, residing at 8523 Via Serena, Boca Raton, FL.  He was an employee and a Senior Developer at TTI from 2011 until March, 2017. He had knowledge of and developed TTI trade secret applications and software code as works made for hire.  He was a collaborator and the chief author of a Power Point Presentation for a competing entity involving Arnold, himself, Puckette, Hughes, Mouli and Ackerman known in 2015 and 2016 as  HubCheck which evolved into eSpear.  He is now an employee of eSpear.

7. Defendant Andrew Puckette ("Puckette") is a citizen of Virginia, residing at 25122 Magnetite Terrace, Aldie, VA, and was an employee and Director of Quality Assurance at TTI since 2012.  He had knowledge of and developed TTI trade secret applications and software code as works made for hire.  He was a "collaborator" on a Power Point Presentation prepared in 2015 through 2016 which was developed while he was an employee of TTI and which sought to secure investors for a competing business then known as HubCheck which evolved into eSpear.  He is now an employee of eSpear.

8.     Defendant Diane Ackerman also known as Diane Rudnet ("Ackerman") is a citizen of Florida, residing at 562 East Kings College Drive, St. Johns, FL.  She was an employee and Senior Sales Director until April, 2017.  She had knowledge of TTI trade secrets, including software, business plans, customer lists and operations. She was a "collaborator" on a Power Point Presentation prepared in 2015 through 2016 which was developed while she was an employee of TTI and which sought to secure investors for a competing business then known as HubCheck which evolved into eSpear.  She is now an employee of eSpear.

9.     Defendants eSpear ("eSpear") are a series of six limited liability companies (eSpear Founding Partners I LLC; eSpear Founding Partners II LLC; eSpear Founding Partners III LLC; eSpear Founding Partners IV LLC; eSpear LLC and eSpear Management Partners LLC) set up on February 15, 2017, all with offices at 15 Grumman Road West, Suite 1100, Bethpage, New York and all set up by Arnold and Hughes as a series of anti-fraud, anti-money laundering and compliance companies meant to compete with and divert customers from TTI.  eSpear has appropriated TTI trade secrets, business plans and software, which it received from Arnold, to develop thinly-disguised versions of TTI programs and software, as well as early TTI prototypes for new applications for use in its business.  eSpear's programs are made by copying and utilizing unlawfully obtained copies of TTI software illicitly, improperly and unlawfully downloaded and copied by Arnold from TTI servers.  By the use of these copies eSpear, acting in concert with Arnold, Hughes, Brannen, Mouli, Fritz, Puckette and Ackerman seeks to market, develop and set up a business unlawfully competing with TTI through the use of TTI trade secrets, including business plans, pricing schedules, customer lists and plans of operation as well as copyrighted material.  All the eSpear Defendants are referred to herein collectively as "eSpear".

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

TTI has asserted claims for misappropriation of trade secrets under the Defend Trade Secrets Act,

18 U.S.C. § 1836, *et seq*., infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*., and a

violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq*., and violations of

the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.,* against Defendants. This Court has

supplemental or pendant jurisdiction over TTI's remaining claims pursuant to 28 U.S.C. § 1367

because such claims are so related to TTI's federal claims that they form part of the same case or

controversy under Article III of the United States Constitution.

11.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(1) because

Plaintiff is a Virginia corporation and several of the Defendants are residents of Virginia.  Venue

is also appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because the events that

gave rise to this complaint occurred in this district.  Venue is appropriate as to all Defendants as

they participated in or conspired with other Defendants in acts which occurred in whole or in part

in this district.

## FACTS RELEVANT TO ALL CLAIMS

### A.     TTI's Business

12.     TTI is a Virginia corporation which is a leading provider of worldwide anti-money

laundering, anti-fraud, consumer identification and compliance products and services throughout

the United States and around the world with offices in Naples and Coral Springs, FL; New York,

NY; and Luxembourg City, Luxembourg.  TTI also uses multiple servers containing its and its

customers' data in Virginia, Cayman Islands, London, England and Luxembourg City,

Luxembourg.  In providing services to its customers TTI utilizes and is constantly developing and

modifying its proprietary and copyrighted software program, known as "Sentinel," the rights to which it has owned and developed since 1996.

13.     As the leading provider of financial protection benefits to thousands of customers, TTI has access to confidential information regarding its customers, policyholders, applicants for insurance coverage, and parties with whom it does business ("Confidential Customer Information").  In addition, the technology and software which TTI utilizes and develops for its use and for the use of its customers is highly specialized and secret, developed by it over a twenty-year period, and subject to constant change and development, which is done in a confidential and guarded manner.

14.     The market for compliance and anti-money laundering and anti-fraud software is highly competitive as well as highly secretive.  The software algorithms which detect fraud and other financial schemes are by their nature and function highly confidential so as to be undetectable and untraceable in order to detect fraud, money laundering and other financial crimes.  There are a multitude of other companies, each offering their own anti-money laundering, anti-fraud and compliance services, which utilize specialized software designed to detect such financial malfeasance, competing for the same customers and market share as TTI's services.  TTI's Sentinel software has been developed since 1996 through the process of employees writing, perfecting, and developing the code as works made for hire. Sentinel is a unique software program which utilizes copyrighted algorithms and code which performs data loading, evaluation and access through its developed processes which are different than its business competitors.

15.     TTI's success is dependent on its ability to protect its copyrighted software formula, code, algorithms and utilization methods to detect financial misdeeds and to protect its customers' confidential information, as well as its own confidential, proprietary, and trade secret information.

7

16.     Because of the highly sensitive nature of its business, TTI's confidential, proprietary, and trade secret information includes, but is not limited to, its financial, business, technical, and economic information; customer lists; products; claims practices; pending litigation or litigation strategies; reserves; services; research; data bases; computer software; business or marketing plans; intellectual property; the prices it obtains or has obtained or at which it sells or has sold its products; private information about people or companies with whom TTI does business, including its partner companies such as Thomson Reuters, Regulatory DataCorp, Inc. and Info4c AG, customers, employees, producers, and suppliers; information that is provided to TTI on the condition that it is kept confidential, such as licensed computer software plans; and any other information of, about, or concerning the business of TTI, its manner of operation, strategic direction, and/or its plans (collectively, "Trade Secret Information").

17.     The value of TTI's Trade Secret Information is in its exclusive use by TTI and its employees.

**B.      TTI's Steps to Protect the Copyright of Sentinel and to Maintain Confidential Nature of Its Information**

18.     TTI relies on a combination of copyright and trade secret laws, as well as computer passwords, limited access, confidentiality agreements, employment agreements and confidentiality policies to establish and protect its Trade Secret Information and Confidential Customer Information.

19.     In 1996, Thein acquired by contract from TASC, Inc., and transferred to TTI, the software code upon which TTI's Sentinel product is based.  TTI has from 1996 through the present continued to develop and modify Sentinel and has utilized the services of various employee software engineers to do so, including Defendants Arnold, Fritz, Brannen, Mouli, and Puckette. All codes written by any or each of them with respect to Sentinel and any other TTI software,

program, code or algorithm from 1996 to the present have been written for TTI as a work made for hire.  (A copy of the TASC documents with TTI and Thein is attached as Group Exhibit 4.)

20.     The copyright in and to the Sentinel software is owned by TTI.  In order to protect its ownership rights, TTI applied for and was granted Copyright Registration Number TXu 2-033-911 for the Sentinel software.  (A copy of TTI's Certificate of Registration is attached as Exhibit 5.)

21.     TTI's confidentiality/non-disclosure obligations of its employees as set forth in its security policy documents and policy provides, in relevant part, among other things that employees may not use TTI's confidential information to disadvantage the company and that TTI can discipline employees who fail to respect the confidential nature of information.  (A copy of TTI's security policies is attached as Exhibit 6.)

22.     TTI's policies with regard to protection of its copyrighted software provide, in relevant part, that employees must manage software access and personal data responsibly and in compliance with privacy laws and TTI company policies, and that they may not disclose any private, sensitive, secret or confidential information outside of the company.  Further, TTI's policies require that its proprietary copyrighted Sentinel software may not be duplicated, copied, downloaded or utilized for any other purpose than furthering the business of TTI and its customers.

23.     In addition to the protective measures described above, TTI restricts access to its Trade Secret Information, copyrighted software, Confidential Customer Information, and Confidential Employee Information by, for example, requiring encryption of external devices (such as flash drives), utilizing software to monitor when/how existing software codes and data as well as Confidential Customer Information is sent outside of TTI, and requiring employees to encrypt TTI software and Confidential Customer Information before it is sent to a third party.

### C.   Defendants' Employment with TTI

24.     All Defendants (except eSpear) were employed by TTI as part of the development, sales and technological teams and had access to and responsibility for the development, management and creation of software products and services for the customers of TTI.   All Defendants signed employment and confidentiality agreements or had similar written understandings in place with TTI relating to their employment at TTI and were aware of Trade Secret Information of TTI and the efforts that TTI made to protect their Trade Secret Information. All Defendants were aware of the fact that all such Trade Secret Information was to be used only for the benefit of TTI and its customers and for no other purpose.   All Defendants were aware that their creation of such software and technological products was done for the benefit of TTI and its customers and not for their own benefit and that at all time such software and technological products were the sole property of TTI and could not be diverted or used by Defendants for any other purpose than to benefit TTI and its customers.

### D.   Defendants' Wrongful Conduct – Arnold, Fritz, Brannen, Mouli, Puckette, Ackerman

25.     Beginning in 2016, Defendant Arnold began withholding information from TTI regarding the software development projects on which he was working.   He caused Defendants Mouli and Fritz to slow down their development of a new User Interface.   He refused to share information when directed to do so by TTI's President Egide Thein.   He began to make various threats, including causing the entire development team's resignation; questioned the viability of the company; and asserted his importance to it.   He also refused to reveal codes and data for TTI projects on which he and other members of the development team were working.

26.     Unknown to Egide Thein, during 2015 and 2016, Defendants Arnold, Fritz, Brannen, Mouli, Puckette, Ackerman together with Defendant Hughes prepared and disseminated

a presentation for investors for the purpose of securing investment in a competing company then known as HubCheck which eventually evolved into Defendant eSpear.  (*See* Exhibit  7).

27.    Copies of selected pages from the investor deck are reproduced in full in this paragraph and are compared to pages which are graphic representations and illustrations taken from versions of the eSpear website.  These pages make clear that Defendants sought to market their HubCheck/eSpear enterprise while employees of TTI.  The pages also make clear how these deck slides ended up as illustrations on the eSpear website and are currently used to market eSpear to prospective companies in competition with TTI.

Copies of Defendants HubCheck presentation deck pages 11, 10 and 12:







Copies of Defendant eSpear website screens as compared to in HubCheck presentation deck pages above:







It is clear that eSpear's graphics are substantially the same as and taken from the HubCheck presentation which was made by Defendants Arnold, Fritz, Brannen, Mouli, Puckette, and Ackerman when they were TTI employees utilizing TTI resources and proprietary information which, together with Defendant Hughes they then illegally and improperly conveyed to eSpear in order to compete with TTI. eSpear clearly utilizes presentation material as its own which rightfully belongs to TTI because it was prepared and developed by TTI employees on TTI's time and on TTI's dime.

28.     On January 25, 2017, TTI hired Darren Spurgeon as Vice President of Technology and Business Development. Defendant Arnold then became even more secretive, withholding information and codes on projects on which he was working while claiming that Spurgeon was

there to replace him.  On February 28, 2017, Defendant Arnold resigned from the company but offered to provide transitional services to TTI ostensibly to complete various TTI projects in progress at the time of his departure.  During this transitional period, Defendant Arnold continued to work on certain designated projects, specifically issues relating to one of TTI's UK servers.

29.     Beginning on March 20, 2017 and continuing through March 27, 2017, Arnold surreptitiously and without authorization accessed servers using an IP address from which he had accessed the servers before.  His access was without right or authorization as he had no transitional tasks to perform with respect to the servers he accessed as none of these were the UK server on which he was to continue to work.

30.     On March 20, Arnold accessed servers 8 and 10, which housed what TTI calls its "Boreal environment" and which contained TTI's Sentinel and modifications to Sentinel which were under development. He explored multiple files, and ran scripts (commands and actions) multiple times, all for the purpose of transferring and copying said files to his home directory, from which he then downloaded them.

31.     From March 23 to March 26, 2017, Arnold used the copy scripts he had run earlier on March 20 to run scripts in 8 of 12 TTI server environments, transferring files to his home directory, making archive copies and downloading them from the TTI system.

32.     On March 25, 2017, he logged into the system in a surreptitious way (described below) to hide his intrusion and again ran a script to create an archive of TTIs US3 server.  He then transferred this archive to his home directory and downloaded it from the TTI system.

33.     In all instances Arnold used what is called the "root account" to try to hide his intrusion into the system and ran scripts to archive and to copy, download and transfer all data he accessed from the system.

34.     None of the instances of Arnold's intrusions into the system were for the purpose of his providing transitional services to TTI subsequent to his resignation and none of these instances were authorized by TTI.

35.     TTI does daily backups of all of its servers and there was no need for Arnold to download files for archival purposes or for any other reason.

36.     In messages to Thein and Spurgeon on April 21 and 24, 2017, respectively, Arnold admitted that he took the software code for Sentinel, claiming that "his" work product now belonged to eSpear because he worked for eSpear and refused to turn the code over to TTI despite several demands by TTI that he do so. His emails state, in relevant part, in response to a demand for the code made by Darren Spurgeon:

> "Darren, I am willing to provide you the code via any mechanism you want – github or google documents.  I am providing you the code for installation on TTI's production server and QA servers subject to definitization (sic) of the relationship between eSpear and TTI….Also, once definitization has occurred, I will be happy to work with you or your designee….Please revert with your understanding and acceptance of these conditions by Sunday evening so I can schedule my work Monday." *See* Email from Jonathan Arnold to Darren Spurgeon 9:56 PM, April 21, 2017

> "The entire purpose of me wanting to talk to Dave Olenzak is to resolve my current status with TTI and that of my work product and intellectual property, which actually belongs to eSpear as I now work for eSpear." *See* Email from Jonathan Arnold to Darren Spurgeon 10:48 PM, April 21,  2017.

The emails in their entirety are attached as Group Exhibit 8.

37.     Defendants Brannen, Mouli, and Fritz resigned on March 3, March 17 and March 23 respectively. Puckette offered to resign when it became clear he was working for eSpear and he was instead terminated on April 24, 2017.  Ackerman was terminated on April 27, 2017.  All had been working for eSpear, in competition with TTI, prior to their termination of employment with TTI.  Subsequent to their termination or resignation these employees began working openly

for eSpear, where these Defendants utilized and accessed the software code and files previously copied and downloaded by Arnold for the benefit of eSpear.

38.     On April 10, 2017, TTI fortuitously received a misdirected email between all Defendants which details the concerted and orchestrated exodus from TTI of the entire Development team and other key employees in order to set up a competing company, eSpear.  In addition, TTI has been able to uncover bits and pieces from artifacts Defendants left behind, which have further illuminated their conspiratorial and illegal activities in connection with the conspiracy to destroy TTI's business and set up a competing business with it.  All Defendants acted in concert and conspired to steal TTI's business and customers for the benefit of themselves and eSpear by stealing TTI's Trade Secret Information and downloading, copying and utilizing the technology and software developed by Defendants during the time of their employment with TTI.

39.     TTI has demanded the return of its property which Defendants had in their possession to work on TTI projects for the benefit of TTI, including computers, hard drives, software, software codes and other electronic media and devices.  Even though Defendants are no longer working for the benefit of TTI, they have refused to return certain hardware and on hardware they have returned, they attempted to delete the devices' software contents in order to try to hide their infringement of TTI's software and Trade Secret theft and their use of TTI software, plans and projects for the benefit of themselves and Defendant eSpear.

### CLAIMS FOR RELIEF

### Count I
### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016
### (Against All Defendants)

40.     TTI re-alleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

41.     While employed by TTI, Defendants obtained access to TTI's Trade Secret Information.

42.     The Trade Secret Information obtained by Defendants is related to TTI's services that are offered and provided in interstate commerce.

43.     The Trade Secret Information obtained by Defendants is a "trade secret" under 18 U.S.C. § 1839(3).

44.     Defendants have maliciously and willfully misappropriated TTI's electronic and physical documents, software, programs, algorithms, and codes which contain TTI's Trade Secret Information (hereafter Documents).

45.     TTI has demanded that Defendants cease and desist from utilizing their Trade Secret Information and Documents and has demanded the return of its property and Trade Secret Information, and Defendants have failed and refused to cease and desist and to return that property without any appropriate basis to do so.

46.     As a result of Defendants' misappropriation of TTI's Trade Secret Information, Defendants have violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)).

47.     As a direct and proximate result of Defendants' violation of the Defend Trade Secrets Act of 2016, TTI has sustained substantial damages in an amount that will be established at trial of this matter.

48.     Defendants' actions in converting and misappropriating TTI's Trade Secret Information for their own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of TTI.

49.     Defendants' actions have caused and will continue to cause damages in an amount which will later be determined at trial, but have also caused TTI irreparable harm if not

preliminarily and permanently enjoined.  The irreparable harm to TTI consists of potential loss of business reputation, misappropriation of trade secrets, trademark and copyright infringement, and breach of non-competition and non-disclosure agreements and breach of its customer information all of which cannot be compensated by money damages.

50.     TTI has no adequate remedy at law because Defendants' actions are affecting TTI's customers and its reputation in the extraordinarily sensitive marketplace of financial anti-fraud compliance.

**Count II**
**Misappropriation of Trade Secrets Under the Virginia Uniform Trade Secrets Act**
**(Against All Defendants)**

51.     TTI re-alleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

52.     While employed by TTI, Defendants obtained access to TTI's Trade Secret Information.

53.     TTI took reasonable steps to preserve the secrecy of its Trade Secret Information.

54     TTI's Trade Secret Information is a "trade secret" under the Virginia Uniform Trade Secrets Act, Section 59.1-336, *et seq*., of the Code of Virginia, as amended (The Virginia Uniform Trade Secrets Act").

55.     Defendants have misappropriated TTI's Documents, software, programs, algorithms, and codes, customer information, methods of operation and plans for marketing and development of the business, all of which contain TTI's Trade Secret Information.

56.     Defendants have utilized TTI's Trade Secrets Information including documents, software, programs, algorithms, and codes, customer information, methods of operation and plans for marketing and development of the business for their own benefit.

57.     Defendants have copied and utilized TTI's Trade Secret Information.

58.     As a result of Defendants' misappropriation of TTI's Trade Secret Information, Defendants have violated the Virginia Uniform Trade Secrets Act.

59.     As a direct and proximate result of Defendants' violation of the Virginia Trade Secrets Act, TTI has sustained substantial damages in an amount that will be established at trial of this matter.

60.     Defendants' actions in converting and misappropriating TTI's Trade Secret Information for their own gain and use were willful, wanton, and malicious, and were taken with reckless disregard for the rights of TTI.

61.     Defendants' actions have caused and will continue to cause TTI irreparable harm if not preliminarily and permanently enjoined.

62.     TTI has no adequate remedy at law because Defendants' actions are affecting TTI's customers and its reputation in the extraordinarily sensitive marketplace of financial anti-fraud compliance, and because of all other issues set forth hereinabove.

**Count III**
**Conversion**
**(Against All Defendants)**

63.     TTI re-alleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

64.     Defendants are in wrongful possession of TTI's Documents, which contain TTI's Trade Secret Information, Confidential Customer Information, proprietary Software and codes and/or Confidential Employee Information.

65.     Defendants have wrongfully asserted dominion or control over TTI's property in a manner inconsistent with TTI's ownership and entitlement to such property.

21

66.     As a direct and proximate result of Defendants' conversion of TTI's property, TTI has suffered or will suffer damages and has suffered irreparable harm.

67.     TTI has no adequate remedy at law because Defendants' actions are affecting TTI's customers and its reputation in the extraordinarily sensitive marketplace of financial anti-fraud compliance.

### Count IV
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*.
### (Against All Defendants)

68.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in all preceding paragraphs of the Complaint.

69.     TTI provided Defendants with access to password protected electronic devices including computers for the sole purpose of development of software and technology for the customers of TTI and for transacting business with TTI's customers and in furtherance of TTI's business.

70.     Defendants intentionally and without authorization, or in excess of their authorization, removed massive amounts of TTI's confidential software and programs which TTI developed, used and maintained for its customers through the use of TTI's protected computers in violation of the Computer Fraud and Abuse Act, Act 18 U.S.C. § 1030, *et seq*.

71.     Defendants improperly obtained confidential financial and trade secret and copyrighted materials and information through TTI's protected computers for the express purpose of setting up a competing business with TTI.

72.     As a result of Defendants' actions, TTI has suffered and will suffer losses in excess of $5,000, including substantial costs in an effort to re-secure and re-develop its computer systems,

software anti-fraud, anti-money laundering and compliance software and data information storage capabilities from further intrusion by Defendants.

### Count V
### Violation of the Virginia Business Conspiracy Act, VA. Code Ann. § 18.2-499
### (Against All Defendants)

73.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in all preceding paragraphs of the Complaint.

74.     Beginning in 2014, Defendant Hughes acting in concert with Defendant Arnold put in place a plan to acquire TTI's business at what founder Egide Thein considered a bargain basement price.  In furtherance of that plan and conspiracy, Defendants did one or more of the following acts:

a.      In March of 2014, Defendant Hughes, then corporate counsel to TTI, took steps to oust the then President of TTI, David Olenzak, and put himself in his place as President.

b.      In June of 2014, Defendants Hughes and Arnold presented Egide Thein, the majority shareholder of TTI, with a plan for an outside investor to acquire TTI at an unacceptably low price with unfavorable terms which Thein rejected. Thein later learned by accident that Defendants Arnold and Hughes were to be part of the acquiring group. Thein also learned in 2017 that instead of terminating the plan to acquire TTI, Defendants Arnold and Hughes have been engaged in a variety of acts in furtherance of their plan to acquire the company from Thein, including but not limited to:

i.      Further developing a business plan to take over TTI, in which Defendants Hughes and Arnold would share in 50% of a new company, with other unnamed and unknown persons.  The plan relied upon secreting and acquiring by theft and deception the software and technology, copyrighted material and Trade Secrets of TTI in order to utilize these assets in their new company.

ii.     Misrepresenting to third parties that the buyout price was a third of the value of TTI and that the buyout was preceding because the main shareholder had health issues related to his advancing age.

iii.    Taking steps and encouraging other development team personnel working on improvements and new platforms for TTI's software

23

and technology, to delay development efforts in order to injure the relationship of TTI with its customers and vendors, and further devalue the company.  Instead, they worked with Defendants Mouli, Fritz, Puckette, Brannen and Ackerman/Rudnet to develop and secure investors, in 2015 into 2016, for a competing business at first called HubCheck and eventually called eSpear which utilized the software, and, technology from Sentinel as well as early prototypes for a new FACTA application based on secret TTI internal research and development. (*see* Exhibit 7 and paragraph 26-28 hereof).

iv.     Driving up company costs by hiring several ghost employees who were supposed to be performing various tasks for TTI at exorbitant rates of payment.  All such employees were "employed for TTI" through the Law Offices of James Hughes and resulted in significant sums of money being paid to Defendant Hughes for such employees: i.e., $160,800 to John Diwishek, a supposed support engineer; Heather Luti, who allegedly was to work on accounts receivable from her home but instead did projects for Defendant Hughes; $87,500 to Bruce Ackerman, another alleged part-time engineer; all of whom performed little or no work for TTI.  While all this was happening, TTI continued to pay Defendant Hughes $232,668 per year as its corporate counsel.

v.      Undertaking and operating (from July through October, 2014) as a separate business competitor within TTI, all without authorization from or the knowledge of Thein.  For instance, Defendants Arnold and Hughes ordered investigative reports outside of TTI protocols from Thomson Reuters, a major vendor of TTI, in the name of TTI. They had these reports delivered to Defendant Arnold's home address instead of to TTI's office.  Defendants Arnold and Hughes expended large sums of money from TTI for these reports, none of which were authorized and were secreted from Thein.

vi.     In 2014, TTI entered into a business arrangement with a Singapore company, ethiXbase Pte, Ltd to order Enhanced Due Diligence Reports.  All such orders were steered by Defendant Hughes to one sales person, Defendant Rudnet, who arranged at Defendant Hughes' direction for four persons to share a 25% commission when all such previous sales had borne a 10% commission. These commissions were shared by Defendant Rudnet/Ackerman and John Diwishek (also known as John Pulford) at the direction of Defendants Hughes and Arnold, without the authorization or consent of Thein.

vii.    Defendants Hughes and Arnold entered upon a program to delay the development of the new Sentinel user interface to devalue the company in order to acquire it for a third of its value.

viii.   Defendant Hughes, along with Defendant Arnold, caused rumors to be circulated among company employees and the general industry-wide group of which TTI was a part, that the company was not properly organized on a corporate level; they threatened to fire many key employees who were not part of their scheme to acquire the company or who opposed their actions meant to acquire the company; they made claims that TTI would fail SOC2 and Algorithm audits which were necessary to its continuation in business; they claimed that as a result members of the Board would lose all their money and eventually their homes because of TTI's problems which Defendants Hughes and Arnold fabricated; and they threatened to cause the entire development team to resign.

ix.   Defendant Arnold fabricated a phony security breach at one of TTI's overseas servers in Luxembourg to further devalue and diminish the company.

x.   Defendant Hughes hired a phony company to do an audit.

xi.   Defendants Hughes and Arnold formed eSpear in 2017.

xii.   Defendants Hughes and Arnold orchestrated the departure of the entire development team, all of whom now work for eSpear utilizing the Trade Secrets, copyrighted software and technology of which they gained knowledge through their employment at TTI, which they had a duty to protect and not disclose or utilize for the benefit of third parties: namely now eSpear.

xiii.   Defendant Hughes was fired on November 17, 2016.  With the assistance of Defendant Arnold, Defendant Hughes continued to use his TTI email address in secret until Defendant Arnold's departure from TTI.

xiv.   Defendant Arnold terminated his employment on February 28, 2017, but offered to stay on and help with the transition.  He refused to sign a consultant agreement maintaining that he was bound by the confidentiality and non-compete agreement to which he had been a party as an employee. He in fact used this transition time to further his conspiracy with Defendant Hughes and the other Defendants by copying and downloading copyrighted software and codes and acquiring TTI customer information, software and technology for himself.

xv.   In addition to his downloading of protected Trade Secret and copyrighted information during the transition period, Defendant

Arnold hacked into Thein's email and secured files at TTI to gain information about TTI which subsequent to this termination Thein wanted to be kept from Defendant Arnold.

75.     All acts alleged in this Count V were undertaken as a part of and in furtherance of a conspiracy between Defendants Hughes and Arnold, assisted by various acts of other Defendants who participated and committed acts in furtherance of the conspiracy, to drive down the value of TTI so that they could acquire the company, and when that scheme failed, to acquire the Trade Secrets, technology, software, customers and business of TTI for themselves and for their new company--Defendant eSpear-- to compete with TTI.

76.     Defendant Arnold acted as the manager of this conspiracy keeping track of all conspiratorial tasks and activities in an online app known as Priority Matrix.  Screen shots of his task list and activities set forth thereon are reproduced in the graphic below. First Screen shot 1:



Screen shot 1 lists certain of Defendant co-conspirators as collaborators, and demonstrates the co-conspirators knowledge of, and involvement in, the conspiracy.

Screen shot 2 lists tasks and activities relating to eSpear.  For instance Defendant Arnold is listed in the right hand column with respect to "created in Pitch Deck / Critical and Urgent" on 12:07 PM, 8/08/2016 and completed on August 22, 2017:



Screen shot 3 from Arnold's Priority Matrix app shows ongoing eSpear tasks per right hand column from 10/09/2016 to 10/10/2016.



77.     Both Defendant Arnold's Priority Matrix app and the Hubcheck presentation clearly shows that Arnold, while a Board member and employee of TTI, was working against the interest of TTI throughout 2016.  Arnold led all Defendants in a concerted, voluntary agreement to conspire against TTI in order to misappropriate TTI's trade secrets and proprietary information from TTI to establish a business which would compete with TTI all in knowing violation of their statutory and common law duties.

## Count VI
### Tortious Interference with At-Will Employment Relationships
### (Against Arnold and Hughes)

78.     Plaintiff realleges and reincorporates herein by reference each and every allegation contained in all preceding paragraphs of the Complaint.

79.     Prior to the expiration of the transition period, Defendant Arnold, acting with Defendant Hughes, utilized improper methods, including misappropriation of trade secrets and confidential and proprietary information, to actively recruit and hire Defendants Mouli, Fritz, Puckette, Brannen, and Ackerman/Rudnet as well as Diwishek and others to work at eSpear, thereby interfering in their employment relationship with TTI.  Defendants Arnold and Hughes hired the other Defendants to perform for eSpear substantially the same duties as their duties at TTI, utilizing the Trade Secrets, copyrighted material and proprietary information which they learned during their employment at TTI.

80.     TTI reasonably expected Defendants Mouli, Fritz, Puckette, Brannen Ackerman/Rudnet and John Diwishek and others to abide by the terms of their employment and to act in accord with their employee fiduciary and duties of loyalty and maintain these duties of loyalty, non-disclosure and non-appropriation of TTI's Trade Secrets and proprietary information.

81.     As a result of Arnold's and Hughes' purposeful interference with the  at-will employment relationship of these employees, TTI has suffered damages, including lost employees, disclosure and use of their proprietary confidential information and trade secrets and a loss of business reputation.

## Count VII
### Tortious Interference with Business Relationship
### (Against All Defendants)

82.     Plaintiff realleges and reincorporates herein by reference each and every allegation contained in all preceding paragraphs of the Complaint.

83.     Defendant Arnold accessed a business system known as Salesforce in which TTI maintains its client lists, customer information and sales information.

84.     Defendant Arnold downloaded all the information from this system for the purpose of acquiring the customer base which belongs to TTI and to bring it over to his new company eSpear so that eSpear and all other Defendants who now work for eSpear can utilize this information to set up a business to compete with TTI and take TTI's business away by utilizing TTI's proprietary information and Trade Secrets.

85.     All Defendants are utilizing the misappropriated information in the conduct of the business of eSpear.

86.     All Defendants have an obligation not to use the proprietary confidential information and Trade Secrets of TTI in their new business, nonetheless they are using it to set up a competing business against TTI's interests.

87.      As a result of Defendants' purposeful use of this misappropriated proprietary information and Trade Secrets, Defendants have interfered and will continue to interfere with the contractual and business relationships which TTI has with its customers and vendors.  Therefore, TTI has suffered damages, including lost revenues and a loss of business reputation.

88.     Prior to their departure from TTI, Defendants, in concert and individually, conspired to contact customers and vendors of TTI and actively misled them as to the continuance of TTI's business and status as a company as part of their intentional scheme to use TTI's

proprietary and Trade Secret Information to acquire TTI's customers and vendors for eSpear and to otherwise use at Defendant eSpear.

89.    TTI expected that its business relationships with the customers and vendors that Defendants contacted and misled would continue.

90.    Defendants interfered with TTI's current and expected economic advantage with respect to the following customers and vendors: Thomson Reuters, RDC, and others yet to be discovered.

**Count VIII**
**Breach of Fiduciary Duty**
**(Against Defendant James Hughes)**

91.    Plaintiff realleges and reincorporates herein by reference each and every allegation contained in all preceding paragraphs of the Complaint.

92.    At all times relevant hereto Defendant Hughes was an attorney, licensed to practice law in the state of New York.  He was hired by TTI as corporate counsel in 2012 and continued to act as company attorney until he was fired by Thein in 2016.

93.    In 2014 Defendant Hughes engaged in a disinformation and rumor campaign against the then President of the Company, Olenzak, causing Olenzak to be terminated from his position, which Defendant Hughes then assumed.

94.    Defendant Hughes refused to sign an employment agreement stating that his fiduciary duties as attorney to the corporation made it unnecessary for him to sign such an agreement.

95.    Thereafter in 2014, Defendant Hughes and Defendant Arnold put together a business plan to purchase the company at one third of its value and presented this to Thein.  When Thein refused to accept their offer, they embarked upon a conspiracy with one another into which

they eventually drew all other Defendants named herein.  Said conspiracy had the object and purpose of acquiring TTI, or if that failed, then to acquire the business, customers, trade secrets and proprietary information of TTI for themselves in order to start their own company which would compete with TTI.

96.    In furtherance of this scheme, on February 17, 2017, Hughes took steps to incorporate several limited liability companies in the State of Delaware all connected with Defendant eSpear.  The purpose of the creation of eSpear was to acquire the business, customers, trade secret and proprietary information of TTI by theft through the actions of Defendants.

97.    Defendant Hughes promoted false information regarding the corporate status and ownership of TTI in order to sow distrust and conflict, and harm TTI's business reputation with its employees and ultimately its customers and vendors.

98.    Defendant Hughes spread false rumors claiming that he was the new owner of TTI, when it fact his efforts to buy TTI had been rebuffed by Thein.

99.    Defendant Hughes had access to and knowledge of TTI's software and technology, trade secrets and proprietary information, including confidential customer information, rates for service and company capacity to perform the duties required for its customers and vendors.  He used that knowledge to actively promote the interests of eSpear over that of TTI and sought to divert and solicit TTI's customers and vendors for eSpear and away from TTI.

100.    Hughes recruited Defendant Arnold and the other Defendants to assist him in his scheme and to acquire by stealth from 2014 and continuing through April of 2017, the trade secrets, copyrighted material and technology of TTI, and to solicit the key members of the TTI development team to resign en masse beginning with Arnold at the end of February, 2017, through April, 2017, after which they became employees of eSpear.

32

101.    All of these acts were in breach of his fiduciary duty as a Board Member and President of TTI since 2014, and as attorney for TTI since 2012.

102.    At all times relevant hereto Defendant Hughes was acting in furtherance of his own interests and not in the interests of TTI by committing the acts alleged herein.

103.    Defendant Hughes' breach of his fiduciary duty directly and proximately caused TTI to suffer damages, including loss of business and reputation and lost value for the attorney's fees and compensation it paid to Hughes when he was acting on behalf of himself, Arnold and eSpear to the detriment of TTI.

### Count IX
### Copyright Infringement pursuant to 17 U.S.C. § 101, *et seq.*
### (Arnold and eSpear)

104.    Plaintiff incorporates herein, by reference, the same as if set forth at length verbatim, the factual allegations contained hereinabove.

105.    By their downloading, copying and transferring Sentinel from TTI's servers to himself and to eSpear so that eSpear can utilize the Sentinel software and algorithms of TTI, Defendants Arnold and eSpear  knowingly and willfully infringed, and do continue to infringe, Plaintiff's copyright protected rights of use, distribution, reproduction and exclusive right to authorize derivative works from the software codes which make up the Sentinel program.

106.    Plaintiff placed Defendants on notice of their infringement, but Defendants continue to willfully infringe Plaintiff's copyright rights contained in its software codes in disregard of and indifference to Plaintiff's copyright rights and protected expression thereto.

107.    As a direct and proximate result of Defendants' copyright infringement, Plaintiff has suffered, and will continue to suffer, severe injuries and harm, much of which cannot be reasonably or adequately measured or compensated in money damages and certainly if such

wrongful conduct is allowed to continue unabated. The ongoing harm this wrongful conduct will continue to cause Plaintiff is both imminent and irreparable. Plaintiff's injuries and damages include, but are not limited to, loss of customers and vendors, dilution of goodwill, injury to its reputation as a software author, and diminution of the value of its intellectual property.

108.    Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary injunction during the pendency of this action and to a permanent injunction enjoining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in such further violations of the Copyright Act.

109.    Plaintiff is further entitled to recover from Defendants the damages, including pre-judgment interest it sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged hereinabove, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

### Count X
### Violation of the Digital Millennium Copyright Act under 17 U.S.C. § 1201, *et seq.*
### (Against Defendant Arnold)

110.    Plaintiff incorporates herein, by reference, the same as if set forth at length verbatim, the factual allegations contained hereinabove.

111.    Defendant Arnold on March 20 through March 26, 2017 utilized stealth and surreptitious means to circumvent and to bypass the security protocols of TTI in order to access its system in areas in which he did not have authorization for the purpose of copying, downloading and transferring to himself and Defendant eSpear the copyrighted materials and codes which make up TTI's Sentinel program.

112.    In so doing, Defendant Arnold violated the Digital Millennium Copyright Act, 17 U.S.C. 1201, *et seq.* ("DMCA").

113.   As a direct and proximate result of Defendant Arnold's DMCA circumvention violation, Plaintiff has suffered, and will continue to suffer, severe injuries and harm.  The ongoing harm this wrongful conduct will continue to cause Plaintiff includes, but are not limited to, loss of customers and vendors, dilution of goodwill, injury to its reputation as a security and compliance company, diminution of the value of its intellectual property and costs associated with remediation to prevent any further breach and to increase security and to pay claims that may accrue as a result of Defendant Arnold's breach.

114.   Plaintiff is entitled to recover any damages and costs which it may have to bear as a direct and proximate result of Defendant Arnold circumvention and violation of DMCA.

115.   Plaintiff is entitled to recover its attorney's fees on account of Defendant Arnold's violation of DMCA.

WHEREFORE, TTI respectfully requests that this Court:

1.   Order Defendants to deliver TTI's Documents as well as any other Confidential Customer Information, Trade Secret Information and/or Confidential Employee Information in Defendants' and/or their attorney's possession, custody, and control to the undersigned counsel within twenty-four (24) hours, together with a signed representation that Defendants, and their attorney, did not alter, destroy, remove, copy, or retain any document, file, or information;

2.   Order Defendants, and all persons acting in concert with them and their attorney(s) to destroy any and all copies of TTI's Documents;

3.   Enter a temporary restraining order, and preliminary and permanent injunctions that:

a.   Enjoin all Defendants from contacting and soliciting business from TTI's current and potential customers, and current employees.

b.  Enjoin all Defendants from using, disclosing, or misappropriating TTI's trade secrets and copyrighted software, codes as technology and confidential information;

c.  Order all Defendants to deliver TTI's hardware and Documents as well as any other Confidential Customer Information, Trade Secret Information and/or Confidential Employee Information in Defendants' and/or their attorney's possession, custody, and control to the undersigned counsel within twenty-four (24) hours, together with a signed representation that Defendants, and their attorney, did not alter, destroy, remove, copy, or retain any document, file, or information;

d.  Order all Defendants, and all persons acting in concert with them and their attorney(s) to destroy any and all copies of TTI's Documents;

e.  Prevent Defendants from infringing TTI's copyrighted software and codes under 17 U.S.C. § 502; and

f.  Require the destruction of all infringing copies of TTI's copyrighted codes and software in the possession, custody or control of Defendants, including their officers, agents, employees or attorneys, and its removal from their respective websites under 17 U.S.C. § 503.

4. Require the destruction of all infringing copies of TTI's copyrighted codes and software in the possession, custody or control of Defendants, including their officers, agents, employees or attorneys, and its removal from their respective websites under 17 U.S.C. § 503;

5.  Find that the Defendants committed the infringements in Counts Nine and Ten of the Verified Complaint willfully, while substantially certain that injury would result from their

conduct, and that each Count involved a wrongful act, that necessarily caused injury, and was committed intentionally and without just cause or excuse;

6. Find that the Defendants, following notice of their infringements, continued the infringements in Counts Nine and Ten of the Verified Complaint willfully, while substantially certain that injury was resulting from their conduct, and that each Count was a continuation of a wrongful act, that necessarily was causing injury, and was continued intentionally and without just cause or excuse;

7. Find that the infringements in Counts Nine and Ten of the Verified Complaint have been committed willfully and appropriately adjust the awarded damages as provided by 17 U.S.C. § 504, to provide, in lieu of punitive damages, an appropriate deterrence to others that may consider similar violations of the Copyright Law;

8. Enter a judgment declaring that Defendants misappropriated and converted TTI's copyrighted materials, codes and software, other property and Trade Secret Information;

9. Enter a judgment against Defendants on Counts One through Ten of the Verified Complaint for Injunctive Relief and Damages;

10. Award monetary damages to TTI on Counts One through Eight in an amount to be proven at trial, but not less than $500,000;

11. Award treble damages on Counts One, Two and Five in amount to be proven at trial;

12. Award attorney's fees and costs to TTI on Counts One, Two, Five, Nine and Ten in an amount to be proven at trial; and

13. Grant TTI such other relief as the Court deems just and equitable.

Dated:  July 21, 2017

**TRUTH TECHNOLOGIES, INC.**
**By Counsel**

/s/_____
David L. Greenspan  (VSB # 45420)
Nicholas D. SanFilippo (VSB No. 79018)
**McGuireWoods LLP**
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102-4215
Telephone:  703.712.5096 (D. Greenspan)
Direct Fax:  703.712.5214 (D. Greenspan)
Telephone:  703.712.5378 (N. SanFilippo)
Direct Fax:  703.712.5220 (N. SanFilippo)
dgreenspan@mcguirewoods.com
nsanfilippo@mcguirewoods.com

John J. Michels (*pro hac vice* application forthcoming)
Judith S. Sherwin (*pro hac vice* application forthcoming)
**Lewis Brisbois Bisgaard & Smith**
550 West Adams Street, Suite 300
Chicago, IL 60661
Telephone:  312.345.1718
john.michels@lewisbrisbois.com
judith.sherwin@lewisbrisbois.com

*Counsel for Plaintiff*

92201883_1

38

## VERIFICATION

Pursuant to FRCP 65, the undersigned certifies that he is  a duly authorized representative of Plaintiff and that the statements set forth in this Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that they verily believes the same to be true.

Egide Thein